**TWILIGHT ACRES, INC.,**
**Plaintiff-Appellee,**

v.

**BOARD OF REVIEW OF SAC COUNTY, Iowa, and Paul McCorkle as Chairman of the Board of Review of Sac County, Iowa; Defendants-Appellants.**

No. 83–361.

Court of Appeals of Iowa.

Jan. 24, 1984.

Frank W. Pechacek, Jr. and Randy R. Ewing of Smith, Peterson, Beckman & Willson, Council Bluffs, and Stephen Richardson, County Atty., for defendants-appellants.

D.R. Franck of Franck, Mundt, Nepper & Franck, Denison, for plaintiff-appellee.

Heard by OXBERGER, C.J., and DONIELSON and SACKETT, JJ.

DONIELSON, Judge.

Defendant Board of Review appeals from the judgment of the district court reversing its orders denying a charitable property tax exemption for plaintiff's property under Iowa Code § 427.1(9) (1981). Defendant claims plaintiff is not entitled to an exemption because the property, a nursing home for the elderly, was not actually used for charitable or benevolent purposes and was not operated without a view to pecuniary profit, both of which are re-

quired by the statute in order to be entitled to the exemption. We affirm.

Plaintiff is a non-profit corporation which owned an intermediate care and residential care nursing facility in Wall Lake, Iowa. The plaintiff protested to defendant board of review ("Board") the 1981 and 1982 property tax assessments placed on the property on the basis that it was exempt from taxation under Iowa Code section 427.1(9) (1981) since it was used by a charitable non-profit corporation and was used for an appropriate charitable object. The protests were denied by the Board and plaintiff appealed both decisions. The two appeals were consolidated for trial. On February 15, 1983, the trial court entered its judgment holding that plaintiff was a charitable society using its nursing home for an appropriate charitable object without a view to pecuniary profit and thus pursuant to section 427.1(9) its property was tax exempt for 1981 and 1982. The Board brought this appeal.

I.

This controversy arises out of Iowa Code section 427.1 which sets out the list of exemptions from property taxation; in particular, section 427.1(9) which exempts in relevant part: "All grounds and buildings used ... by ... charitable, benevolent ... institutions and societies solely for their appropriate objects ... and not leased or otherwise used ... with a view to pecuniary profit." In *Evangelical Lutheran Good Samaritan Society v. Board of Review of Fayette County*, 267 N.W.2d 413 (Iowa Ct.App.1978), we described our standard of review in the following terms: "Review is de novo. Tax exemption statutes are strictly construed, with any doubt resolved in favor of taxation. Plaintiffs have the burden to show that the property should not be taxed." *Id.* at 414. "Institutional exemptions are viewed with more favor than exemptions to private persons." *South Iowa Methodist Homes, Inc. v. Board of Review of Des Moines*, 173 N.W.2d 526, 531 (Iowa 1970). The Board claims that plaintiff nursing home is not exempt under this statute because it is not operated solely for charitable or benevolent purposes and because it is in fact operated with a view to pecuniary profit. We consider these claims separately.

■■■ We have no trouble concluding that plaintiff's facility was used for charitable or benevolent purposes. Our case law makes it clear that the gratuitous or partly gratuitous care of the elderly is a charitable purpose. *Evangelical Lutheran*, 267 N.W.2d at 414; *South Iowa Methodist*, 173 N.W.2d at 532. The record reflects that plaintiff is involved in precisely this kind of care. The Board does not and cannot contest plaintiff's assertion that its purpose is to operate a home for elderly, invalid, and retired persons. Plaintiff presented evidence at trial that its facility was licensed by the state as an intermediate and residential care facility providing a range of medical and nursing services for elderly patients. Intermediate care patients were given constant nursing care and the residential patients were given occasional nursing services. Plaintiff also presented evidence at trial that it provided nursing care in excess of the nursing care required by the state. All of the residents were provided with meals, housekeeping services, social activities, and other services normally provided by such a facility. Plaintiff has satisfied its burden of proving that its facility satisfies the charitable purpose test of the exemption statute.

II.

■■■ We also conclude that plaintiff has sustained its burden of proving that it does not operate its facility with a view to pecuniary profit. Initially, we note that the facility was built in 1961 largely on the strength of cash donations in excess of $125,000. Some of plaintiff's residents receive Title XIX assistance. Under the Title XIX program the care of these patients is paid by the Iowa Department of Social Services on the basis of a formula which results in plaintiff receiving payments which are less than the average cost of caring for the patients under the program.

Plaintiff does not discriminate in admissions between private-pay and Title XIX applicants who reside in the area serviced by the facility. The Board appears to place great emphasis on the fact that plaintiff's written admissions policy contains the statement "Private patient will have priority over welfare, unless patient is a resident of the Wall Lake-Lake View area." We do not discern any profit motive from this provision. Given the necessarily limited resources available to a facility such as is involved here, it is reasonable for that facility to limit its services to the people in its proximate geographical area. In this case, plaintiff's facility was designed for the people in the Wall Lake-Lake View area; among the people in that area, plaintiff does not discriminate in admissions between private pay and Title XIX applicants. No one has ever been evicted for inability to pay; in fact, plaintiff has often absorbed the cost of various charges and services (e.g., prescription drugs) which Title XIX did not cover and which the resident could not afford. During the five-year period from 1977 through 1981, plaintiff had an average net income return on equity of 6.4 percent and an average EBDIT (earnings before deductions of depreciation, interest and taxes) return on equity of 14.6 percent. On the basis of a comparison by plaintiff's expert witness of plaintiff with comparable nursing home operations, the expert concluded that plaintiff would have to earn four to five times what it was actually earning (before depreciation, interest and taxes) to successfully compete for capital with investor-owned nursing homes. On the basis of this comparison, the expert concluded that plaintiff was not operated to make a profit. The record also indicates that plaintiff had paid no dividends, its board members worked without pay, and that all income was used to meet expenses, make renovations and improvements and retire debt. The expert testified that plaintiff was able to support itself financially from its operation, but that for such a facility to remain in operation, it had to generate more than its daily operating expenses in order to handle the effects of inflation as well as the expenses of equipment replacement and facility renovation, among other things.

The Board's specific arguments that plaintiff is operating under a profit motive are without merit. The fact that plaintiff had a modest net income nearly every year is not significant; as already noted, the record indicates that any corporate entity must bring in more than required to meet expenses in order to provide for increased working capital needs. Nor are we impressed with the fact that plaintiff's equity in the facility has grown steadily over the last few years. This growth in equity is the result of nothing more than plaintiff's continual payments on the mortgage incurred in building the facility. If those payments were not made, the mortgagee would foreclose and thus force the closing of plaintiff's facility. Under these circumstances, it is unrealistic to ascribe a pecuniary profit motive to plaintiff because of this growth in equity.

Plaintiff has sustained its burden of proving its compliance with the terms of section 427.1(9) and that it is entitled to the property tax exemption therein provided. We therefore affirm the judgment of the district court exempting plaintiff's facility from tax.

AFFIRMED.